J. H. FLY ET AL., APPELLANTS, v. C. H. JACKSON ET AL., RESPONDENTS.—45 S. W. (2d) 919.

Springfield Court of Appeals. February 4, 1932.

204

*Hiett, Lamar & Court* for appellants.

*Fred W. Barrett* and *C. H. Jackson* for respondents.

SMITH, J.—This case was instituted in the Circuit Court of Wright County, returnable to the June term, 1931. The suit was by J. H. Fly, John Lay, and C. A. Coomer, plaintiffs, against C. H. Jackson,

C. D. Shannon, Tom C. Short, John H. Hicks, J. E. Lewis and Ed W. Leach, defendants, and based on the following petition, caption, signatures and affidavit omitted:

"Plaintiffs for their cause of action state that for many years prior to May 27, 1930, School District No. 75 in Wright County, Missouri, was, and is now, a common school district organized and incorporated as required by law; that ever since its organization and incorporation it has been and is now, a duly organized and incorporated common school district as required by law.

"Plaintiffs further state that they and each of them were at all times herein mentioned and are now the duly elected and qualified directors of said school district, No. 75; that they at all times herein mentioned were, and are now, citizens of the United States, resident taxpayers of said school district No. 75 and that they and each of them have paid a State and county tax within one year next preceding his election; that they and each of them have resided in this State one whole year next preceding his election, and that they and each of them at the time of their respective election were more than twenty-one years of age, and that they and each of them were elected by the qualified voters of said school district No. 75, at the time and in the manner prescribed by law and that they and each of them were resident taxpaying citizens, and were at all times herein mentioned qualified voters in said school district No. 75.

"Plaintiffs further state that they and each of them within four days after their respective election of school directors of said school district No. 75, took and subscribed an oath required by law and that they and each of them were, on the 27th day of May, 1930, and are now, incumbents of the office of school directors in school district No. 75, and are in the discharge of the duties of such school directors when not prevented from the discharge of such duties by the defendants herein.

"Plaintiffs further state that within four days after the annual meeting at which they were elected that they met and organized as required by law.

"Plaintiffs further state that at all times herein mentioned the school district in which the city of Mountain Grove, in the County of Wright, in State of Missouri, is situated was and is now a town district and that it had and has at all times herein mentioned six directors and was, and is now, duly incorporated according to law and was known and designated as the town school district of Mountain Grove.

"Plaintiffs further state that said Mountain Grove town district had by its last enumeration prior to May 27, 1930, within its limits more than seven hundred (700) pupils of school age.

"Plaintiffs further state that some time prior to April, 1930, the officers and residents of said Mountain Grove School District were desirous of obtaining the advantages of a consolidated school district under the provisions of Section 11258, Revised Statutes of Missouri, as amended by the Laws of 1925, page 331, and that the said officers and residents of said Incorporated Mountain Grove School District prior to April, 1930, circulated a petition and presented it to Yale Meyers, the clerk of said incorporated school district, praying that there be submitted to the qualified voters of School District No. 76 of Wright County, Missouri, a proposition to detach all the territory in said town school district of Mountain Grove outside of the corporate limits of the said City of Mountain Grove.

"Plaintiffs further state that pursuant to said petition a purported notice was given by the clerk of the town incorporated school district of Mountain Grove to the voters of said school district No. 76 that the proposition would be submitted to them, the qualified voters of said district No. 76, to detach from said school district No. 76 all of the territory outside of the limits of the said City of Mountain Grove; that the said purported notices posted by the said Yale Meyers were not signed by him or any one else as the clerk of School District No. 76.

"Plaintiffs further state that at the annual school meeting in April, 1930, the purported proposition to detach the aforesaid territory from School District No. 76 was submitted to the qualified voters of the Town School District of Mountain Grove, and carried by a vote of one hundred thirty (130) for and one (1) against.

"Plaintiffs further state that at the time of the annual school meeting in April, 1930, there was no such school district as School District No. 76 in Wright County, Missouri, and that School District No. 76 had for many years been dissolved by the organization and incorporation of the town school district of Mountain Grove.

"Plaintiffs further state that the officers and citizens of the said town school district of Mountain Grove entered into an agreement in writing and delivered the same to the officers of school district No. 77 adjoining the town school district of Mountain Grove on the west, that if the said School District No. 77 would submit at its annual school meeting in April, 1930, the proposition to annex the territory to be detached by said School District No. 76, and hold the same until the Town School District of Mountain Grove could form a consolidated school district, the said Town District of Mountain Grove would have included in a proposed consolidated School District all the territory purported to be detached by the said School District No. 76, and would not include in said proposed consolidated School District any of the original territory belonging to said School District No. 77.

"Plaintiffs further state that said school district No. 77, pursuant to said agreement submitted at their annual meeting in the said school district in April, 1930, a purported proposition to annex to School District No. 77 the territory purported to be detached from said School District No. 76 and annex the same to School District No. 77.

"Plaintiffs further state that the annual meeting in school district No. 77 and before the vote was taken as to whether school district No. 77 would annex the territory sought to be detached from school district No. 76, the officers of said annual school meeting read to the voters at said annual school meeting the above mentioned agreement in writing, explaining to the voters at said annual meeting that the purpose of annexing to said school district No. 77 the territory sought to be detached from said School District No. 76, and said officers of said school district No. 77 stated to the voters at the annual school meeting in School District No. 77 that the territory sought to be detached from School District No. 76 was in reality territory belonging to the town district of Mountain Grove and that the purpose of annexing to said district No. 77 was only temporary and for the sole purpose of reducing the number of pupils of school age in the town school district of Mountain Grove below five hundred (500) so that it could form a consolidated school district and the consolidated school district would include all the territory annexed by school district No. 77 when it formed a consolidated school district.

"Plaintiffs further state that the proposition to annex the territory purporting to be detached by School District No. 76 was submitted to the voters of said School District No. 77 and carried.

"Plaintiffs further state that the school house in District No. 77, at the time of said annual school meeting in April, 1930, could not accommodate more than sixty (60) pupils, and that the pupils of school age in the territory sought to be detached by the town school district of Mountain Grove as territory of School District No. 76, was more than two hundred (200).

"Plaintiffs further state that the territory sought to be detached by Mountain Grove School District as territory of School District No. 76 surrounded the corporate limits of the City of Mountain Grove, except one-half mile on the west side of said City of Mountain Grove, which half-mile joined School District No. 77.

"Plaintiffs further state that there was at the time of said annual school meeting in April, 1930, a large number of pupils of school age living north, south and east of the corporate limits of the said City of Mountain Grove, in the territory sought to be detached by Mountain Grove School District as territory of School District No. 76, who would have been compelled to pass through the City of Mountain

Grove and travel more than two miles west to reach the school house in School District No. 77.

"Plaintiffs further state that in a short time after the annual school meeting in April, 1930, a petition was presented to Jonah Long, County Superintendent of Schools of Wright County, Missouri, praying for a special election to be held for the purpose of forming a consolidated school district, and which petition included all the territory purported to be detached from School District No. 76, and none of the original territory in School District No. 77, and all the territory in said School District No. 75.

"Plaintiffs further state that as requested by said petition, the said Jonah Long called a special election to be held at the gymnasium in the City of Mountain Grove on the 27th day of May, 1930; that at said election one hundred sixty-five (165) voted for organization and none against, but that the plaintiffs did not vote at said special election.

"Plaintiffs further state that the said County Superintendent of Schools, at no time filed a copy of the petition presented to him as aforesaid in the office of the county clerk of Wright County, Missouri, neither did he file in the office of said clerk an authenticated plat of said proposed consolidated school district and that the plats posted by him of said proposed consolidated school district were not approved nor signed by him.

"Plaintiffs further state that the said Jonah Long, at the time he designated the territory to form a proposed consolidated school district, well knew that there was no School District No. 76 in Wright County, Missouri, from which to detach territory to be annexed to School District No. 77, and that he, conniving with the officers of the town School District of Mountain Grove, instructed the clerk of School District No. 77 to enumerate none of the children in the territory purporting to be detached from School District No. 76, and, also, instructed the clerk of the town school district of Mountain Grove to not enumerate the children of school age purported to be detached from School District No. 76.

"Plaintiffs further state that all of the proceedings as to the detaching and annexation of the territory aforesaid and the consolidation of the school district known as consolidated school district No. 3 of Wright County, Missouri, was void for the reason that all of the facts above enumerated in this petition show that the proceedings were had for the purpose of evading a positive statute and would constitute a legal fraud, and at the time of said purported consolidation, said purported consolidated school district included within its territory a town or city school district which had, at the time of the formation thereof, by its last enumeration, more than five hundred (500) pupils of school age, which fact was well known to the aforesaid County Superintendent of Schools at the time he

designated the boundaries of said purported consolidated school district.

"Plaintiffs further state that at said pretended election held on May 27, 1930, the defendants were purported to be elected directors of the said pretended consolidated school district No. 3 of Wright County, Missouri, and that they have since June 30, 1930, till the present time without any legal right or authority exercised and attempted to exercise the office of school directors of said purported and pretended consolidated School District, including the territory in School District No. 75.

"Plaintiffs further state that they requested Frank R. Collier, Prosecuting Attorney of Wright County, Missouri, to, at their relation and cost, file an information in the nature of *quo warranto* in order to determine the question as to whether or not the said purported consolidated School District was legally organized and as to whether the defendants had any legal right or authority to exercise the rights, powers and privileges of directors of said purported consolidated School District, and especially over the territory included in School District No. 75, and as to whether or not said special election dissolved said District No. 75 after the 30th day of June, 1930.

"Plaintiffs further state that they made the same request of Stratton Shartel, Attorney-General of the State of Missouri, as they did of the said Frank R. Collier, and that both the said Frank R. Collier and the said Stratton Shartel arbitrarily refused to grant the request of the plaintiff.

"Plaintiffs further state that they at all times have disputed and now dispute the claim of the defendants that a consolidated school district was formed at the special election on May 27, 1930.

"Plaintiffs further state that they have at all times disputed and now dispute that the defendants have any right to exercise the rights, powers and privileges of school directors of any school district, more especially of School District No. 75.

"Plaintiffs further state that they have at all times disputed and now dispute the contention of the defendants that school district No. 75 was dissolved by the special election held on the 27th day of May, 1930.

"Plaintiffs further state that on account of the aforesaid action of the said Prosecuting Attorney and Attorney-General, they have no adequate remedy at law.

"WHEREFORE, plaintiffs pray that a writ of injunction issue from this Court enjoining the defendants and each of them from interfering with, molesting and interrupting the plaintiffs in the discharge of their duties as school directors of School District No. 75, and from exercising any authority as school directors of said pretended consolidated School District No. 3 of Wright County, Mis-

souri, over the territory included in said School District No. 75, until they have established their right and title so to do at law, and for such other and further relief as to the court may seem just and proper in the premises."

On June 8, 1931, the defendants appeared in court and filed a demurrer to the petition and alleged "that it appears upon the face of their petition that said petition does not state facts sufficient to constitute a cause of action."

On June 9, 1931, the demurrer was sustained by the trial court, and the plaintiffs declined to plead further, and judgment was accordingly entered for the defendants.

In due time the plaintiffs appealed and the case is here upon the sole assignment of error that the court erred in sustaining the demurrer. The plaintiffs contend that the petition does state a cause of action for injunctive relief. That is the only question for us to decide here.

The defendants contend and the plaintiffs concede that injunction is not a proper remedy to try title to office. Our courts have so determined this question. [Civic League v. City of St. Louis (Mo. Sup.), 223 S. W. 891; State ex rel. Baker v. Smith (Mo. Sup.), 196 S. W. 17.]

The legality of the organization of a school district cannot be inquired into by injunction. [School District No. 4 v. Smith, 90 Mo. App. 215, 225; State ex rel. v. Stone, 152 Mo. 202, 53 S. W. 1069.[

This petition presents an allegation of a consolidation of parts of different districts, and specifically attacks the legality of such consolidation election and the election of the defendants as directors of Consolidated District No. 3. This cannot be done by injunction. Until that election is set aside the defendants are at least *de facto* officers of consolidated District No. 3, and injunction is not the remedy to set aside that election. In 22 R. C. L., page 663, section 5, we find this language: "*Quo warranto* will lie only when the party proceeded against is either a *de facto* or a *de jure* officer in possession of the office, and an office that is vacant is in possession of no one. However, a person actually obtaining office with the legal indicia of title is legally in possession thereof, and is a legal officer until ousted. Such an incumbent is an officer *de facto* if not *de jure*, that is, one who is in possession and discharging the duties thereof under color of authority. By color of authority is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent is not a mere volunteer. If the office is actually filled by one holding under the legal indicia of title, there can be no inquiry except upon·*quo warranto*, and until the incumbent is ousted no one else can have any enjoyment of the office."

The plaintiffs contend that this is not a proceeding to oust the defendants from any office, nor is it a proceeding to determine the

right of the defendants to exercise the functions of any office, but that it is simply a proceeding to restrain the defendants from interfering with the plaintiffs in the discharge of their duties as directors of School District No. 75. The trouble with this contention is that the plaintiffs' petition pleads that the defendants are *de facto* officers exercising authority over the territory or school district claimed by the plaintiffs, and the plaintiffs' cause of action depends on the removal of the defendants. If the defendants are in fact officers over that territory, then the plaintiffs are not. The real question then is, whether or not the defendants should be prevented from exercising the duties of the office which the petition pleads they are exercising. In 46 C. J., page 1007 we find this language: "It is a general rule of law that an injunction will not be granted to prevent a party from exercising a public office pending proceedings to determine his right thereto." [Civic League v. St. Louis, 223 S. W. 891.]

The plaintiffs cite us and rely on School District No. 73 v. Gray, 28 S. W. (2d) 1. c. 686, as authority for their contentions in this case. That case says: "The remedy by injunction is recognized as being the proper proceeding by an incumbent officer to protect his possession against the interference of an adverse claimant whose title is in dispute, until the latter shall have established title by law."

We have no fault to find with that holding, so earnestly insisted upon by the plaintiffs, but we must not lose sight of the allegation in the pleading that the defendants are exercising duties, not as officers of School District No. 75, but as officers of Consolidated District No. 3, and that Consolidated District No. 3 is a legally constituted district or a *de facto* district, and that the defendants are legal directors or *de facto* directors, and we think the above case does not hold that such matters may be inquired into and determined by injunction. In fact, on page 686 of the case of Gray v. School District, supra, we find this language, "Of course, if the Consolidated District was a *de facto* corporation it cannot be attacked by defendants or any one else save by the State in a direct proceeding (14 C. J. 204)." [See also State ex inf. Folk v. Talty et al., 166 Mo. 529, 560, 66 S. W. 361; State ex inf. Dorain ex rel. Black v. Taylor et al., 208 Mo. 442, 106 S. W. 1023.]

The plaintiffs practically concede, or impliedly concede that their remedy was by a proceeding in *quo warranto,* and plead that the Prosecuting Attorney of Wright County and the Attorney-General of the State each arbitrarily refused to lend his name in aid of a writ of *quo warranto.* They insist that because of that refusal on the part of these officers they should be permitted to seek their remedy by injunction.

We think the Supreme Court in the cases heretofore cited has held that the remedy in cases of this kind is by *quo warranto,* and we

think that this petition does not plead sufficient facts to entitle the plaintiffs to the relief sought.

We might say further, that this court takes cognizance of pleadings filed in cases in this court, and our files do show that these petitioners did file in this court a petition for a writ of *quo warranto* in the name of the man who was the Prosecuting Attorney of Wright County up to December 31, 1930. In November, 1930, another Prosecuting Attorney was elected who went into office in January, 1931, and it is this Prosecuting Attorney who is alleged to have refused to aid the plaintiffs in *quo warranto*. This court refused to issue the writ of *quo warranto* when originally filed, because the petitioners had access to the circuit court, where testimony was more easily available than in this court. For some reason the plaintiffs waited until the consolidated district had been in operation for a year and these defendants had acted as directors of the consolidated district for a year, and for at least six months of that time they had permission from the former Prosecuting Attorney to use his name in a *quo warranto* proceeding, yet in view of that fact, they waited a year to start the proceeding for injunction relief.

We think the judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.